UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
----------------------------------------------------------------x
MASON TENDERS DISTRICT COUNCIL OF
GREATER NEW YORK AND LONG ISLAND,

                      Plaintiff,

          -against-

CAC OF NEW YORK, INC. and ATLAS
RESTORATION CORP.,

                    Defendants.
----------------------------------------------------------------x

**OPINION AND ORDER**

13-cv-7229 (ER)

Ramos, D.J.:

       Plaintiff Mason Tenders District Council of Greater New York and Long Island

("Plaintiff") brings suit against Defendants CAC of New York, Inc. ("CAC") and Atlas

Restoration Corp. ("Atlas") (collectively, "Defendants") pursuant to section 301 of the Labor

Management Relations Act (the "LMRA").  Doc. 1 ("Compl.").  Plaintiff seeks to confirm an

arbitration award issued pursuant to the procedures set forth in a collective bargaining agreement

("CBA") between itself and CAC.  *Id.*  Additionally, Plaintiff seeks to compel both CAC and

Atlas, a non-signatory to the CBA, to participate in the second phase of the arbitration

proceedings on the grounds that the two were acting as joint employers.  *Id.*

       Atlas moves to dismiss Plaintiff's claim against it pursuant to Rules 12(b)(1) and 12(b)(6)

of the Federal Rules of Civil Procedure.  Doc. 10.  For the reasons set forth below, Atlas's

motion is GRANTED in part and DENIED in part, and Atlas will be dismissed from the case.

**I.**     **Factual Background**

       The following facts are based on the allegations in the Complaint, which the Court

accepts as true for purposes of the instant motion.  *See Koch v. Christie's Int'l PLC*, 699 F.3d

141, 145 (2d Cir. 2012) (evaluating a Rule 12(b)(6) motion); *J.S. ex rel. N.S. v. Attica Cent. Sch.*, 386 F.3d 107, 110 (2d Cir. 2004) (citing *Shipping Fin. Servs. Corp. v. Drakos*, 140 F.3d 129, 131 (2d Cir. 1998)) (evaluating a Rule 12(b)(1) motion).[1]

Plaintiff and CAC executed the current CBA in December 2009.  Compl. ¶ 5.  That agreement extended through November 30, 2014 the collective bargaining agreement that was already in place, with some modifications.  *Id.*  As relevant to the instant motion, the CBA required CAC to notify the appropriate union hiring hall whenever it needed employees for work covered by the CBA, to pay union employees specified wages, and to make fringe benefit contributions on their behalf.  *Id.* ¶¶ 8, 9, 11.  The CBA also contained a grievance and arbitration provision, which required the parties to submit to arbitration any dispute arising under its terms.  *Id.* ¶ 12.  This provision designated Joseph A. Harris ("Harris") as arbitrator and specified that any decision he made was binding on the parties and to be complied with by CAC within five days.  *Id.*

In September 2012, a dispute arose between Plaintiff and CAC with regard to an asbestos abatement project in Co-op City.[2]  *See id.* ¶¶ 13, 16.  Plaintiff claimed that CAC had, *inter alia*, failed to notify Plaintiff about the commencement of work or to compensate workers appropriately.  *Id.* ¶¶ 13-14.  Harris held a hearing on January 25, 2013.  *Id.* ¶ 15.  CAC's

---

[1] Additional facts are derived from the March 23, 2013 arbitration award.  *See* Decl. of John T. Bauer Ex. A (the "Award").  Although not attached to the Complaint, the award is properly before the Court for purposes of both Rules 12(b)(1) and 12(b)(6).  As a matter of course, courts are permitted to consider documents outside the pleadings when ruling on a 12(b)(1) motion.  *See Zappia Middle E. Constr. Co. v. Emirate of Abu Dhabi*, 215 F.3d 247, 253 (2d Cir. 2000).  The Award is properly before the Court on a Rule 12(b)(6) motion because "the complaint 'relies heavily upon its terms and effect,' which renders the document 'integral' to the complaint."  *Chambers v. Time Warner, Inc.*, 282 F.3d 147, 153 (2d Cir. 2002) (quoting *Int'l Audiotext Network, Inc. v. Am Tel. & Tel. Co.*, 62 F.3d 69, 72 (2d Cir. 1995) (per curiam)).

[2] Co-op City is a New York City housing cooperative located in the Bronx, New York.

primary defense was that, on October 3, 2012, it ceased performing work at Co-op City and turned over the project to Atlas.  Compl. ¶ 20.[3]

Harris issued an award on March 23, 2013.  Compl. ¶ 16; *see* Decl. of John T. Bauer Ex. A (the "Award").  The award addressed the following stipulated issue:  "Whether since on or after October 3, 2012 asbestos abatement work at Co-op City was done by or with the consent of CAC of New York, in violation of the Collective Bargaining Agreement (CBA)?"  Award at 2. Harris found in favor of Plaintiff, concluding that "[a]fter October 3, 2012, the asbestos abatement work at Co-op City was done by or with the consent of CAC of New York, in violation of the Collective Bargaining Agreement (CBA)."  *Id.* at 8.  Harris's opinion indicated that "[t]he Parties stipulated that a second hearing will be held to determine damages and will also address the issue, among others, of at what point, if at all, any party for which CAC is not responsible assumed the Co-op city [sic] abatement work."  *Id.*

On September 25, 2013, Plaintiff sent Defendants a letter to confirm their participation in the damages phase of the proceedings.  Compl. ¶ 19.  Neither Defendant responded.  *Id.*  Plaintiff therefore commenced this action on October 11, 2013.  Plaintiff alleges that, by failing to participate in the damages phase of the arbitration, CAC breached the CBA and consequently violated the LMRA.  *Id.* ¶ 24.  Plaintiff also alleges that Atlas implicitly adopted the obligations imposed by the CBA when it became a joint employer with CAC.  *Id.* ¶ 26.  Thus, Plaintiff alleges that, by failing to participate in the damages portion of the arbitration, Atlas also violated the LMRA.  *Id.*

---

[3] Atlas was not a party to the arbitration.  *See* Award at 1.

Atlas now moves pursuant to Rules 12(b)(1) and 12(b)(6), asking the Court to dismiss the Complaint in its entirety as against Atlas.[4]  Doc. 10.  Atlas argues that the Complaint should be dismissed for lack of subject matter jurisdiction because the arbitration award is not final and thus is not ripe for review.  *See* Def.'s Mem. of Law in Supp. at 4.  Atlas further argues that the Complaint fails to plausibly allege that CAC and Atlas were "joint employers."  *See id.* at 5-9.

## II.   The Court Lacks Jurisdiction To Confirm the Partial Arbitration Award

As an initial matter, Atlas seeks dismissal pursuant to Rule 12(b)(1) on the grounds that Harris's award is not final, rendering it unripe for judicial review.  *Id.* at 4.  Atlas's motion is granted to the extent that the Complaint asks the Court to confirm the partial arbitration award.

### A.  Legal Standard

Federal Rule of Civil Procedure 12(b)(1) requires that an action be dismissed for lack of subject matter jurisdiction when the district court lacks the statutory or constitutional power to adjudicate the case.  Fed. R. Civ. P. 12(b)(1).  The party asserting subject matter jurisdiction carries the burden of establishing, by a preponderance of the evidence, that jurisdiction exists.  *Morrison v. Nat'l Australia Bank Ltd.*, 547 F.3d 167, 170 (2d Cir. 2008) (quoting *Makarova v. United States*, 201 F.3d 110, 113 (2d Cir. 2000)).  On a Rule 12(b)(1) motion challenging the district court's subject matter jurisdiction, evidence outside of the pleadings, such as affidavits, may be considered by the court to resolve the disputed jurisdictional fact issues.  *Zappia Middle E. Constr. Co. v. Emirate of Abu Dhabi*, 215 F.3d 247, 253 (2d Cir. 2000); *see also Morrison*, 547 F.3d at 170 (citing *Makarova*, 201 F.3d at 113).  When evaluating a motion to dismiss for lack of subject matter jurisdiction, the court accepts all material factual allegations in the

---

[4] CAC has not appeared in this action and, as a result, has neither responded to the Complaint nor joined in the instant motion.

complaint as true, but does not draw inferences from the complaint favorable to the plaintiff. *Attica Cent. Sch.*, 386 F.3d at 110 (citing *Drakos*, 140 F.3d at 131).

Where, as here, a party also seeks dismissal on Rule 12(b)(6) grounds, the court must consider the Rule 12(b)(1) motion first. *Baldessarre v. Monroe-Woodbury Cent. Sch. Dist.*, 820 F. Supp. 2d 490, 499 (S.D.N.Y. 2011), *aff'd sub nom. Baldessarre ex rel. Baldessarre v. Monroe-Woodbury Cent. Sch. Dist.*, 496 F. App'x 131 (2d Cir. 2012).

### B. Discussion

Federal courts have jurisdiction under the LMRA to confirm "final and binding" arbitration awards. *Gen. Drivers, Warehousemen & Helpers, Local Union No. 89 v. Riss & Co.*, 372 U.S. 517, 519 (1963)).[5] Ordinarily, in order for an award to be deemed "final" and thus ripe for judicial review, "the arbitrators must have decided not only the issue of liability of a party on the claim, but also the issue of damages." *Michaels v. Mariforum Shipping, S.A.*, 624 F.2d 411, 413-14 (2d Cir. 1980).[6] An exception to this general rule applies where the parties expressly agree to bifurcate the issues of liability and damages. *See Trade & Transp., Inc. v. Natural Petroleum Charterers Inc.*, 931 F.2d 191, 194-95 (2d Cir. 1991); *Global Gold Mining LLC v. Caldera Res., Inc.*, 941 F. Supp. 2d 374, 382-83 (S.D.N.Y. 2013); *Mitsubishi Heavy Indus., Ltd. v. Stone & Webster, Inc.*, No. 08 Civ. 509 (JGK), 2009 WL 3169973, at *5 (S.D.N.Y. Sept. 29,

---

[5] The LMRA confers subject matter jurisdiction over "[s]uits for violation of contracts between an employer and a labor organization representing employees in an industry affecting commerce." 29 U.S.C. § 185(a).

[6] Although most of the cases cited in this section examined the finality requirement with respect to arbitration proceedings brought under the Federal Arbitration Act, this Court has previously applied the same lines of case law in assessing finality in the LMRA context. *See Pfizer Inc. v. ICWUC/UFCW Locals 95C*, No. 13 Civ. 1998 (AJN), 2014 WL 1275842, at *4-5 (S.D.N.Y. Mar. 24, 2014).

2009); *Andrea Doreen, Ltd. v. Bldg. Material Local Union 282*, 250 F. Supp. 2d 107, 112

(E.D.N.Y. 2003).[7]

      In the case at bar, Harris returned a partial arbitration award finding CAC liable for

violating the terms and conditions of the CBA.  Award at 8.  The parties specifically stipulated,

however, that a second hearing would be held not only on the question of damages, but also to

"address the issue, among others, of at what point, if at all, any party for which CAC is not

responsible assumed the Co-op city [sic] abatement work."  *Id.*  In other words, the partial award

indicates that, at a minimum, questions remain as to the duration of CAC's liability, and there is

no indication in the record as to what additional issues were contemplated by Harris's use of the

phrase "among others."  Plaintiff fails to clarify or supplement the record in its response, instead

focusing exclusively on its efforts to compel Defendants to participate in the next phase of

arbitration.  *See* Pl.'s Mem. in Opp'n at 1-3.  In so doing, Plaintiff appears to concede

Defendants' position that the award is not final.  *See id.* at 2 (arguing that "[n]o 'final' award is

necessary" in an action to compel arbitration).  Plaintiff does not even raise the bifurcation

exception, let alone proffer an argument as to its applicability in this case.  The Court is therefore

unable to conclude that Harris's award is sufficiently "final" as to render judicial review

appropriate at this point in time.

      Because Plaintiff bears the burden of establishing subject matter jurisdiction by a

preponderance of the evidence (and without the benefit of inferences in its favor), the petition to

confirm Harris's award cannot go forward on the current record.  The portion of the Complaint

---

[7] A related exception provides that a partial award is reviewable if it finally disposes of a "separate and independent claim."  *Metallgesellschaft A.G. v. M/V Captain Constante*, 790 F.2d 280, 283 (2d. Cir. 1986).  Because the arbitration here appears to have involved a single claim for breach of the terms and conditions of the CBA, the Court need not consider this exception.

seeking confirmation of the arbitration award is therefore dismissed without prejudice for failure to establish subject matter jurisdiction.[8]

### III.    Plaintiff Has Failed To State a Claim Against Atlas as a Joint Employer

Atlas also argues that the claim against it should be dismissed for failure to plausibly allege that CAC and Atlas were joint employers.  *See* Def.'s Mem. of Law in Supp. at 5-9.  This portion of Atlas's motion will also be granted.

#### A.  Legal Standard

When ruling on a motion to dismiss pursuant to Rule 12(b)(6), the Court must accept all factual allegations in the complaint as true and draw all reasonable inferences in the plaintiff's favor.  *Koch*, 699 F.3d at 145.  However, the Court is not required to credit "mere conclusory statements" or "threadbare recitals of the elements of a cause of action."  *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (citing *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007)); *see also id.* at 681 (citing *Twombly*, 550 U.S. at 551).  "To survive a motion to dismiss, a complaint must contain sufficient factual matter . . . to 'state a claim to relief that is plausible on its face.'"  *Id.* at 678 (quoting *Twombly*, 550 U.S. at 570).  A claim is facially plausible "when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged."  *Id.* (citing *Twombly*, 550 U.S. at 556).  More specifically, the plaintiff must allege sufficient facts to show "more than a sheer possibility that a defendant has acted unlawfully."  *Id.*  Federal Rule of Civil Procedure 8 "marks a notable and generous departure from the hyper-technical, code-pleading regime of a prior era, but it does not unlock

---

[8] Although the Court lacks jurisdiction to confirm the arbitration award, this alone does not merit dismissing the Complaint in its entirety, *see* Def.'s Mem. of Law in Supp. at 4, as Plaintiff seeks both to confirm the partial award *and* to compel Defendants to participate in the damages phase.  A petition to compel arbitration necessarily involves an arbitration proceeding that has not yet been completed; thus, the finality requirement does not extend to that portion of Plaintiff's claim.

the doors of discovery for a plaintiff armed with nothing more than conclusions." *Id.* at 678-79.
If the plaintiff has not "nudged [his] claims across the line from conceivable to plausible, [the]
complaint must be dismissed." *Twombly*, 550 U.S. at 570.

### B.  Discussion

"[A]rbitration is a matter of contract and a party cannot be required to submit to
arbitration any dispute which he has not agreed to submit." *United Steelworkers v. Warrior &
Gulf Navigation Co.*, 363 U.S. 574, 582 (1960); *see also Sokol Holdings, Inc. v. BMB Munai,
Inc.*, 542 F.3d 354, 358 (2d Cir. 2008) ("It is black letter law that an obligation to arbitrate can be
based only on consent.").  As discussed above, it is undisputed that Atlas was not a party to the
CBA.  Under the general rule, then, Plaintiff would be unable to demand that Atlas participate in
the arbitration proceedings.  However, there are certain situations in which a non-signatory can
be compelled to submit to arbitration.  In this case, Plaintiff attempts to compel Atlas to arbitrate
on the grounds that it and CAC functioned as joint employers with respect to the Co-op City
project.  *See* Compl. ¶¶ 20, 22, 26.

"A conclusion that employers are 'joint' assumes that they are separate legal entities, but
that they have merely chosen to handle certain aspects of their employer-employee relationships
jointly." *Clinton's Ditch Co-op Co., Inc. v. NLRB*, 778 F.2d 132, 137 (2d Cir. 1985) (citing
*NLRB v. Browning-Ferris Indus. of Pa., Inc.*, 691 F.2d 1117, 1122 (3d Cir. 1982)).  If Atlas is
found to be a joint employer with CAC, a signatory to the CBA, then Atlas can be compelled to
arbitrate under its terms.  *See Bloomingdale's, Inc. v. Serv. Emps. Int'l Union, Local 32E*, No. 97
Civ. 8169 (SS), 1998 WL 229441, at *2 (S.D.N.Y. May 7, 1998) (Sotomayor, J.); *Newmark &
Lewis, Inc. v. Local 814, Int'l Bhd. of Teamsters*, 776 F. Supp. 102, 106 (E.D.N.Y. 1991).  The
question of whether a joint employer relationship exists, creating a duty for a non-signatory to

arbitrate pursuant to the terms of a CBA, falls within the purview of the district court.  *See Bloomingdale's*, 1998 WL 229441, at *2 (citing, *inter alia, Longstreet Assocs., L.P. v. Bevona*, 16 F. Supp. 2d 290, 294 (S.D.N.Y. 1998)).

"'[A]n essential element' of any joint employer determination is 'sufficient evidence of immediate control over the employees' . . . ."  *Serv. Emps. Int'l Union, Local 32BJ v. NLRB*, 647 F.3d 435, 442 (2d Cir. 2011) (alteration in original) (quoting *Clinton's Ditch*, 778 F.2d at 138). In *Clinton's Ditch*, the Second Circuit identified five factors that bear on the "immediate control" inquiry.  *See* 778 F.2d at 138-39.  In a subsequent decision, the court summarized those factors as "whether the alleged joint employer (1) did the hiring and firing; (2) directly administered any disciplinary procedures; (3) maintained records of hours, handled the payroll, or provided insurance; (4) directly supervised the employees; or (5) participated in the collective bargaining process."  *AT&T v. NLRB*, 67 F.3d 446, 451 (2d Cir. 1995) (citing *Clinton's Ditch*, 778 F.2d at 138-39); *see also NLRB v. Solid Waste Servs., Inc.*, 38 F.3d 93, 94 (2d Cir. 1994) (per curiam) (noting that *Clinton's Ditch* provides "[r]elevant factors" to consider in assessing whether a joint employer relationship exists).

Here, Plaintiff has altogether failed to allege the existence of these or any other factors tending to support an inference that CAC and Atlas were joint employers.[9]  The Complaint is

---

[9] In its brief, Plaintiff contends that "the factors articulated in *Clinton' Ditch* [sic] overwhelmingly support the conclusion that a joint employment relationship was established," citing "common management, interrelationship of operations, and central control of labor relations" (and, later, "common ownership").  Pl.'s Mem. in Opp'n at 6-7 (internal quotation marks omitted).  In doing so, Plaintiff references the wrong set of factors—namely, the factors used to determine whether two entities are properly treated as a *single* employer.  *See Clinton's Ditch*, 778 F.2d at 137 (noting that "[t]he single employer standard is relevant when 'separate corporations are not what they appear to be, that in truth they are but divisions or departments of a single enterprise'" (quoting *NLRB v. Deena Artware, Inc.*, 361 U.S. 398, 402 (1960))).  Because Plaintiff's claim against Atlas is expressly premised on the existence of a joint employer relationship, these factors are inapposite for present purposes.  Moreover, and despite Plaintiff's arguments to the contrary, the Complaint does not come close to alleging that any of the single employer factors

silent with respect to employee discipline and employee supervision.  There is no mention of record maintenance or provision of insurance benefits, and Plaintiff concedes that workers and supervisors were paid exclusively by Atlas.  Compl. ¶ 21.  The pleadings are similarly devoid of allegations indicating that CAC played any role in hiring and firing employees once Atlas took over the project on October 3, 2012.  To the contrary, CAC acknowledges facilitating the transition of the entire on-site CAC workforce to "employment with Atlas."  Compl. ¶ 21.[10]

The final factor, participation in the collective bargaining process, yields a somewhat counterintuitive result in this case.  CAC, the alleged joint employer, was the *sole* counterparty to the CBA.[11]  While CAC's involvement in the collective bargaining process would ordinarily cut in favor of a joint employment relationship, here the opposite is true because Atlas—the party whose status as an employer is not in dispute—is the non-party to the applicable CBA.  In other words, since all of the indicia of employer status lie with the *non-signatory*, that entity's *non-involvement* in the collective bargaining process becomes the relevant consideration.  In essence, the deficiency in Plaintiff's claim is that CAC did not participate in *Atlas's* collective bargaining

---

were present in this case.  Plaintiff does not allege, for instance, that CAC and Atlas shared a common ownership or management structure; rather, the Complaint expressly refers to Atlas as "another company."  Compl. ¶ 20.

[10] The Second Circuit confronted this specific situation in *Clinton's Ditch*, finding that, although the assumption of an existing workforce deprived the second employer of "independent input into their initial hiring," the employer effectively "chose to hire all of these individuals when it agreed to take over" the collective bargaining contract at issue in that case.  *Clinton's Ditch*, 778 F.2d at 138; *see also id.* at 139 (deeming it of "no significance" that the original supervisor trained his replacements, as failure to do so "would have hardly led to an effective changeover").

[11] To that end, the Court questions whether the joint employer analysis is properly applied to this case at all, as CAC, the only party to the CBA, is the disputed employer.  Since joint employer status functions, in cases like the one at bar, to bind a *non-signatory* to the terms of an otherwise-operative collective bargaining agreement, the typical scenario would focus on whether that non-signatory—Atlas, in this case—could properly be treated as a joint employer.  However, because both parties have briefed the issue under the assumption that CAC's status as a joint employer should be tested, and because Atlas prevails in any event, the Court need not probe the issue further at this time.

process—precisely because such a process never took place, at least with respect to any CBA at issue in this case.[12]

The only allegation regarding CAC's presence at the jobsite after October 3, 2012 is that "CAC remained the employer of record under the New York Department of Labor's and New York Department of Environmental Protection's reticulated rules regarding the performance of asbestos abatement."  Compl. ¶ 21.  The Complaint therefore alleges that the company "remained responsible for any mishap that might occur on the job and appeared as the employer of record on all legally-mandated postings related to the hazardous work being performed at the site."  *Id.*  Plaintiff takes the position that, because CAC remained the licensed asbestos abatement contractor for purposes of the New York asbestos abatement regulations, CAC was still, by definition, "performing abatement" or (more importantly for present purposes) "employing persons" who were doing so.  Pl.'s Mem. in Opp'n at 3-4 (internal quotation marks omitted) (citing N.Y. Comp. Codes R. & Regs. tit. 12, § 56-2.1(n)).  According to Plaintiff, pursuant to these regulations, CAC had "both expansive *obligations* and the *overriding authority* to ensure that every minute aspect of the work on the site—from the detailed record-keeping of the work-progress and workers to the way dislodged material is handled—is  done to code."  *Id.* at 5 (emphasis in original) (internal citations omitted) (citing N.Y. Comp. Codes R. & Regs. tit. 12, §§ 56-3.4, -8.4).

---

[12] The Court notes that, even if CAC's status as the signatory to the CBA were deemed to support Plaintiff's claim, the Second Circuit has previously ruled that this one factor, standing alone, is insufficient to establish a joint employer relationship.  *See AT&T v. NLRB*, 67 F.3d 446, 451 (2d Cir. 1995) ("While both the [administrative law judge] and the [National Labor Relations Board] relied on the fact of AT&T participation in the collective bargaining between ECS and the union, by doing so a single factor in the *Clinton's Ditch* analysis became an independent alternate basis for finding joint employer status.  This is not enough . . . .").

The fact that CAC remained the sole contractor authorized to employ workers at the site pursuant to the New York asbestos abatement regulations is insufficient, without more, to establish a joint employer claim.  Plaintiff claims that, under the asbestos regulations, CAC was responsible for, *inter alia*, "the safety of workers, safety of the public, quality of the equipment, and adequacy of the supervisory staffing."  *Id.* at 6.  However, Plaintiff has not identified any case law suggesting that state regulatory obligations have any bearing on the joint employer analysis.  Instead, Plaintiff simply makes conclusory arguments that "[w]hether CAC fulfilled these responsibilities is a different, but irrelevant, matter."  *Id.*  The Court disagrees.  The existence of a joint employer relationship "is essentially a factual issue."  *Boire v. Greyhound Corp.*, 376 U.S. 473, 481 (1964).  Without some allegations suggesting that CAC *actually* played a role in managing the employees, any legal authority conferred (or imposed) on it by the asbestos regulations is immaterial to the present analysis.[13]  Moreover, even if the regulatory framework could have provided at least a theoretical basis to infer that CAC retained "immediate control" over the employees, in this case the specific allegations in the Complaint affirmatively belie that inference.[14]

---

[13] In any event, having surveyed the specific regulatory provisions that Plaintiff cites, the Court does not share Plaintiff's view that the asbestos regulations confer the type of "overriding authority" that would be relevant to the joint employer analysis.  The regulations set forth procedures and recordkeeping requirements governing the performance of the abatement work itself; they do not speak to the employer-employee relationship or the management of labor relations more generally.  *See* N.Y. Comp. Codes R. & Regs. tit. 12, §§ 56-3.4 to -8.  Whether CAC's transfer of the project to Atlas may have resulted in a breach of certain of these regulatory obligations is a separate issue not properly before the Court, and it does not establish an independent basis for binding Atlas, as a joint employer, to a CBA to which it is not a party.  *See* Pl.'s Mem. in Opp'n at 7 (arguing that "it seems at least *plausible*" that Atlas should not be able to maintain a defense "on the grounds that the two employers *grossly violated* applicable asbestos abatement regulations." (emphasis in original)).

[14] Although the regulations define an asbestos abatement contractor as "[a]n asbestos contractor who performs abatement during an asbestos project or employs persons performing such abatement, N.Y. Comp. Codes R. & Regs. tit. 12, § 56-2.1(n), this definition cannot reasonably be interpreted as compelling a particular outcome under the joint employer inquiry.  The Complaint concedes that Atlas assumed control of the workforce after October 3,

Thus, because Plaintiff has not plausibly alleged that CAC and Atlas operated as joint employers, the Complaint must be dismissed as against Atlas.

**IV.     Conclusion**

For the reasons set forth above, Atlas's motion to dismiss is GRANTED in part and DENIED in part. The denial is solely with respect to Atlas's request that the *entirety* of the Complaint be dismissed for lack of subject matter jurisdiction. The Complaint survives to the extent that it seeks to compel CAC to participate in the second phase of the arbitration proceedings. The balance of the Complaint is dismissed without prejudice. Should Plaintiff wish to file an Amended Complaint, it shall do so by **October 7, 2014**.

The Clerk of the Court is respectfully directed to (1) terminate Atlas Restoration Corp. as a defendant in this case and (2) terminate the pending motion (Doc. 10).

It is SO ORDERED.

Dated:     September 16, 2014
           New York, New York

                                                Edgardo Ramos, U.S.D.J.

---

2012. That changeover cannot be negated by operation of law merely because CAC continued to hold itself out as the licensed contractor for the site. In other words, CAC's purported regulatory status with respect to the *project* cannot override, for purposes of federal labor law, its practical role with respect to its now-former *employees*.